**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KARL K. LITTLE,

                Petitioner,              Case Number: 05-CV-71221

v.                                 HONORABLE NANCY G. EDMUNDS

MILLICENT WARREN,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Karl K. Little, through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, a state inmate who is currently incarcerated at the Muskegon Correctional Facility in Muskegon, Michigan, challenges his convictions for second-degree murder, assault with intent to murder, and possession of a firearm during the commission of a felony. Respondent has filed an Answer in Opposition to Petition for Writ of Habeas Corpus. For the reasons set forth below, the Court denies the petition.

## I. Facts

Petitioner's convictions arise from a shooting that occurred in Luke Perry's basement apartment at 5413 Mitchell Street in Detroit, Michigan. The shooting resulted in the death of the Luke Perry. Gerald Hailey and Angelo Brooks suffered non-fatal gunshot wounds.

Patrick Palmer testified that, on the afternoon of October 12, 1991, he was standing on the front porch of a house located near 5413 Mitchell Street. He was talking to a friend when he saw a car, either a Lexus or a Legend, make a U-turn on Mitchell Street and park. He observed three black men exit the vehicle and cross a field through an alley. A few minutes later, he heard

gunshots.  After the gunfire stopped, Palmer observed the three men return to the vehicle and drive away quickly.  Palmer stated that he had never seen these individuals previously.

Angelo Brooks testified that on October 12, 1991, he helped Perry move his belonging from a home on Kirby Street to Perry's mother's home, located on Mitchell.  He, Perry, Gerald Hailey and "Billy" drove to the home on Kirby Street.  Perry knocked on the door and asked the woman who answered, "Nottie," whether he could enter to retrieve his belongings.  She refused him entry and closed the door.  Perry began pounding on the door.  Moments later, Nottie began shooting through the door.  Brooks fled and Nottie followed him holding a gun.  The other men also fled.  The men regrouped at the home on Mitchell.  About half an hour later, a man Brooks identified as Petitioner and another unidentified man, kicked open the apartment door and started shooting.  He and the other men in the apartment dropped to the ground.  Brooks estimated hearing fifteen shots.  He was shot in the leg and buttocks.  After the shooters left, Brooks noticed Perry had been shot in the head, and Gerald Hailey in the stomach.

Carlos Love testified that he was in Perry's basement apartment on the day of the shooting.  Two black men suddenly entered the room with guns.  He then ran into the bedroom and dove under the bed.  While hiding under the bed, he heard approximately twelve or thirteen gunshots.

Gerald Hailey testified that Perry was his cousin.  Perry was a drug dealer for a man named Thaddeus.  Hailey was present when the shooting occurred.  He identified Petitioner as one of the shooters.

Bader Cassin, a forensic pathologist, testified that he performed an autopsy on Perry.  Perry died from multiple gunshot wounds.  Perry suffered six gunshot wounds, including one to

the head.

Renarda Curry testified that she sold drugs for Petitioner while living at a house on Kirby Street. Perry used to live at her home on Kirby Street. But, sometime before October 12, 1991, he moved out of the home. On October 12, 1991, in the late morning or early afternoon, Perry came to the home with three other men. He told her he wanted to retrieve his belongings. She refused to let him in the home because she believed they were coming to rob her. Curry testified that she fired a gun to get the men off her property. After approximately half an hour, Curry paged Petitioner on his beeper to tell him what had transpired. An hour later, she was at a neighbor, Will Anderson's house, when Petitioner returned her page. She told him what had happened and informed him where Perry now lived and what he and the other men were wearing. Petitioner told her that "[Perry] and his boys were itching for a fight, so they were going to get a fight." Tr., 5/11/92, p. 236. Petitioner stopped by Curry's house a bit later and she again advised him where Perry lived. Petitioner asked what Perry was wearing. Petitioner also told her if she heard any shooting not to worry. Petitioner was carrying a handgun. Curry further testified that, at the time he was living in her home, Perry was selling drugs for an individual named Thaddeus.

Petitioner presented an alibi defense. Four witnesses testified that, at the time the shooting occurred, Petitioner was at his home completing a home remodeling project. It was the defense theory that Thaddeus Bickman was responsible for the shooting. The defense presented testimony that one of the injured men, Angelo Brooks, sold drugs for Bickman and had stolen drugs from Bickman. The defense theorized that Bickman shot Brooks and the other men in retaliation for the theft. The defense presented testimony showing that Bickman and Petitioner

were of similar heights and builds.

Petitioner did not testify in his own defense.

## II. Procedural History

Following a jury trial in Detroit Recorder's Court, Petitioner was convicted of second-degree murder, two counts of assault with intent to murder, and felony firearm. On July 10, 1992, he was sentenced to thirty to sixty years for the murder conviction, fifteen to thirty years for each of the assault convictions, to be served concurrently with one another and consecutively to two years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

> I.      The trial court erred in allowing the prosecutor to testify in her closing argument over objections of the defendant-appellant and in commenting on the testimony erroneously.
>
> II.     The trial court erred in allowing into evidence the gruesome picture of the deceased.
>
> III.    The trial court erred in sustaining the court induced objections to hearsay.

The Michigan Court of Appeals affirmed Petitioner's convictions. People v. Little, No. 155535 (Mich. Ct. App. Oct. 11, 1994).

Petitioner did not seek leave to appeal the Michigan Court of Appeals' decision in the Michigan Supreme Court. *See* Affidavit of Corbin R. Davis, Clerk, Michigan Supreme Court, 9/6/05.

On April 21, 1997, Petitioner filed a motion for relief from judgment in the trial court. On June 5, 1997, the trial court issued an Order Holding Defendant's In Pro Per Motion for Relief from Judgment in Abeyance, "until such time as retained counsel files an amended or

supplemental motion." People v. Little, No. 91-013032.  On December 22, 1998, the trial court

denied the motion.  See id. (12/22/98 Order Denying Motion for Relief from Judgment).

Counsel for Petitioner then filed a Motion to Set Aside Order Denying Motion for Relief from

Judgment on the ground that he had not yet filed the amended or supplemental motion

referenced in the order holding the motion in abeyance and that newly discovered evidence

required extensive investigation.  The trial court denied the motion, reasoning that counsel failed

to file a supplemental brief in the eighteen months since the case was stayed and that the

proffered newly discovered evidence did not persuade the court that a basis for relief was

present.  See id. (1/13/00 Order Denying Motion to Set Aside Order Denying Motion for Relief

from Judgment).  However, three years later, the trial court issued an Order Setting Aside Order

Denying Motion for Relief from Judgment and for Reconsideration.  See 2/21/03 Order.  On the

same date, the trial court issued an Order Denying Motion for Relief from Judgment and to Set

Aside Order Denying Motion for Relief from Judgment.  See 2/21/03 Order.

Petitioner filed a delayed application for leave to appeal in the Michigan Court of

Appeals, presenting ten claims for relief.  The Michigan Court of Appeals denied leave to

appeal.  People v. Little, No. 253818 (Mich. Ct. App. July 14, 2004).  Petitioner then filed an

application for leave to appeal in the Michigan Supreme Court, presenting the same ten claim

presented to the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to

appeal, People v. Little, 471 Mich. 954 (Mich. Dec. 29, 2004), and denied a subsequent motion

for reconsideration.  People v. Little, 472 Mich. 881 (Mich. March 29, 2005).

Petitioner filed the pending petition for a writ of habeas corpus on March 29, 2005,

presenting the following claims:

I.      Petitioner Little was denied due process and a fair trial under the federal Constitution when the trial court failed to instruct the jury on the elements of the necessarily included offense of second-degree murder, for which Petitioner was convicted.

II.     Petitioner Little was denied fair trial because the prosecutor: (A) argued matters not in evidence, and (B) appealed to the jurors' sympathy and civil duty to fight crime to obtain a conviction.

III.    Petitioner Little was deprived of his right to effective assistance of counsel, guaranteed by the United States Constitution when his trial attorney (A) failed to investigate and produce Maurice Williams, Jordan Germany, and Wilbert Robinson as witnesses; (B) failed to allow Petitioner Little the opportunity to exercise his constitutional right to testify; (C) failed to request appropriate lesser included offenses; (D) failed to object to the trial court's improper remarks and erroneous instructions; and (E) failed to object to the prosecutor's improper closing remarks.

IV.     Petitioner Little is entitled to a new trial based on the newly discovered evidence regarding witnesses Williams, Germany and Robinson.

V.      Petitioner Little was denied his constitutional right to testify in his own behalf.

VI.     Petitioner's right to due process and a fair trial were denied when the trial court's remarks explaining the presumption of innocence during *voir dire* totally emasculated this constitutional right.

VII.    Petitioner Little's right to due process under the federal constitution was violated when hew as sentenced on the court's assumption that he was guilty of a crime greater than the jury verdict.

VIII.   Petitioner Little was denied due process because the conviction was against the great weight of the evidence.

IX.     The admission of a gruesome photograph depicting the deceased deprived Petitioner of due process and a fundamentally fair trial.

X.      Petitioner Little was denied his right to present his defense when the state court excluded exculpatory evidence establishing the guilt of Thaddeus Bickman as the perpetrator.

XI.     The cumulative effect of the errors committed during Petitioner Little's trial require relief because he did not receive a fair trial under the federal constitution.

XII. Petitioner Little established an entitlement to relief from the judgment of his conviction and sentence by demonstrating good cause for the failure to raise claims I through VIII on direct appeal or in a prior motion and, actual prejudice from the alleged irregularities in this criminal process, and therefore, the claims are not procedurally defaulted.

XIII. Petitioner is entitled to an evidentiary hearing.

## III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; see also Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 409-11.

## IV. Analysis

### A. Timeliness of Petition

Respondent argues that the petition was not timely filed. The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA" or "the Act") applies to all habeas petitions filed after the effective date of the Act, April 24, 1996, and imposes a one-year limitations period on habeas corpus petitions. Petitioner's application for habeas corpus relief was filed after April 24, 1996. Therefore, the provisions of the AEDPA, including the limitations period for filing an application for habeas corpus relief, apply to Petitioner's application. Lindh v. Murphy, 521 U.S. 320, 337 (1997).

A prisoner must file a federal habeas corpus petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Sixth Circuit Court of Appeals has held that the one-year limitations period does not begin to run until the time for filing a petition for a writ of certiorari to the United States Supreme Court has expired. Isham v. Randle, 226 F.3d 69, 694-95 (6th Cir. 2000). Where a prisoner's conviction became final prior to the effective date of the AEDPA, the prisoner is permitted one year from the AEDPA's effective date to file a petition for habeas corpus relief in federal court. Austin v. Mitchell, 200 F.3d 391, 393 (6th Cir. 1999). In addition, the time during which a prisoner seeks state-court collateral review of a conviction does not count toward the limitations period. 28 U.S.C. § 2244(d)(2). However, a properly filed application for state post-conviction relief, while tolling the statute of limitations, does not serve to restart the limitations period. Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003).

In the pending case, Petitioner's conviction became final before the AEDPA's effective date, April 24, 1996. Therefore, absent state collateral review, Petitioner was required to file his application for habeas corpus relief by April 24, 1997, to comply with the one-year limitations period.

Petitioner sought state collateral review of his conviction by filing a motion for relief from judgment on April 21, 1997, that is, with three days remaining in the limitations period. That motion was denied on December 22, 1998. However, three years later, the trial court set aside that order and issued a new Order Denying Motion for Relief from Judgement. Petitioner then filed delayed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court. Both Michigan appellate courts denied leave to appeal. The Michigan Supreme Court did so on March 29, 2005. The limitations period, of which three days remained, recommenced on March 30, 2005. Petitioner filed his habeas petition on March 29, 2005.

Respondent argues, however, that the limitations period was not tolled from December 22, 1998, when the motion for relief from judgment was first denied, until February 21, 2003, when the trial court set aside that motion. Respondent maintains that the limitations period expired before the trial court set aside the first order denying the motion for relief from judgment. The Court finds that, because the first order denying motion for relief from judgment ultimately was set aside, it was insufficient to trigger the running of the limitations period. Accordingly, the Court finds that the petition was timely filed.

## B. Request for Evidentiary Hearing

Petitioner argues that the Court should hold an evidentiary hearing regarding the

following claims: ineffective assistance of counsel, right to testify in his own behalf, and newly discovered evidence.  Rule 8, Rules Governing Section 2254 Cases in the United States District Courts states, in pertinent part:

> If the petition is not dismissed at a previous stage in the proceeding, the judge, after the answer and the transcript and record of state court proceedings are filed, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required.

*See* Rule 8, Rules Governing Section 2254 Cases.

In addition, the federal court may conduct an evidentiary hearing only if the facts underlying the claim, if true, would establish a constitutional error.  Sawyer v. Hofbauer, 299 F.3d 605, 610 (6th Cir. 2002).

In this case, the Court finds that an evidentiary hearing is unnecessary for a just resolution of Petitioner's claims.

## C.  Procedural Default

Respondent claims that all of Petitioner's claims are procedurally barred.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003), *citing* Lambrix v. Singletary, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  Lambrix, 520 U.S. at 525, 117 S. Ct. at 1523.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claim, and shall, therefore, not address the claimed procedural default.  The Court, therefore, also need not address Petitioner's

twelfth claim, which asserts cause and prejudice to excuse the default.

## D. Jury Instruction Regarding Second-Degree Murder

First, Petitioner argues that he was deprived of his rights to due process and a fair trial when the trial court failed to instruct the jury on the elements of second-degree murder.

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal citation omitted). An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991), (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147). In Neder v. United States, 527 U.S. 1, 9, (1999), the Supreme Court explained that a jury instruction "that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence."

Under Michigan law, the elements of second-degree murder are "(1) a death, (2) caused by an act of the defendant, (3) absent circumstances of justification, excuse, or mitigation, (4) done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high

risk of death with the knowledge that the act probably will cause death or great bodily harm."

People v. Bailey, 451 Mich. 657, 669; 549 NW2d 325 (1996) (quotation omitted).

The trial court gave the following instruction for second-degree murder:

Second degree murder is committed only if the actor acts with the intent to kill, to [sic] intent to inflict great bodily harm, or the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result.

* * *

Now, the difference between first degree premeditated murder and second-degree murder is that the first premeditated murder the defendant must have actually intended to kill and have premeditated the victim's death, and have deliberated, or substantially reflected upon the killing before hand.

Such premeditation and deliberation is not required for second degree murder. For second degree murder the defendant must have actually intended to kill, or have intended to do great bodily harm, or have created a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result.

Tr. Vol. III, pp. 78, 82.

The trial court's omission of a specific reference to the element that the killing must be without justification is subject to the harmless-error analysis. "[I]mproperly instructing the jury on an element of the offense ... is subject to harmless-error analysis." Johnson v. United States, 520 U.S. 461, 469 (1997)(internal citations omitted). On habeas review, an error is harmless if the court is satisfied it did not have a substantial and injurious effect or influence in determining the verdict. Brecht v. Abrahamson, 507 U.S. 619 (1993). In this case, Petitioner did not present a defense that a justification existed for the shooting. Instead, he presented an alibi defense. Therefore, the failure to instruct on this element was harmless. The Court finds that the instructions as a whole did not deny Petitioner his right to due process.

## E.  Prosecutorial Misconduct Claim

Petitioner argues that the prosecutor engaged in misconduct which denied him his right to a fair trial.  First, Petitioner argues that the prosecutor argued facts not in evidence when she argued that Perry was moving out of the home on Kirby because he wanted to extricate himself from the drug house and when she argued that Curry told Petitioner exactly where Perry lived and how to get into the home.  Further, Petitioner claims that the prosecutor improperly argued facts not in evidence with respect to the path of the fatal bullet.  Second, Petitioner argues that the prosecutor improperly appealed to the jurors' sympathy when she told the jury it was important that Petitioner be brought to justice, and when she implored the jury not to discount the death of Perry because he was a black man who was involved in narcotics.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation."  Caldwell v. Russell, 181 F.3d 731, 736 (6th Cir. 1999).  The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances."  Angel v. Overberg, 682 F.2d 605 (6th Cir. 1982).  The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'"  Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997), (quoting Serra v. Michigan Department of Corrections, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The last state court to issue a reasoned opinion regarding Petitioner's first claim of prosecutorial misconduct, the Michigan Court of Appeals, stated, in relevant part:

> Defendant was not denied a fair trial by allegedly improper remarks made by the prosecutor during rebuttal.  Any error that may have occurred was harmless. . . . The trial court cured any prejudicial effect of the prosecutor's first remark by reminding the jury that her statements were not evidence.  People v. Hall, 396

14

> Mich. 650, 655; 242 N.W.2d 377 (1976); <u>People v. Curry</u>, 175 Mich. App. 33, 45;
> 437 N.W.2d 310 (1989). Further, the prosecutor did not make statements of facts
> which were unsupported by the testimony of the medical examiner. . . . There is
> also no merit to defendant's contention that the trial court failed to be impartial by
> bolstering the prosecutor's view of the medical examiner's testimony. The record
> shows that the trial court left the resolution of the issue of the trajectory of the
> bullet to the jury.

<u>Little</u>, slip op. at 1.

Petitioner has not shown that the state court's conclusion in this regard was contrary to or

an unreasonable application of Supreme Court precedent. Moreover, the trial court judge

carefully instructed the jurors that lawyers questions, statements and arguments are not evidence.

Therefore, based upon the "well-established presumption jurors follow their instructions," <u>Cyars</u>

<u>v. Hofbauer</u>, 383 F.3d 485, 493, (6th Cir. 2004), the Court finds that the prosecutor's arguments

did not deprive Petitioner of a fair trial.

Petitioner also argues that the prosecutor improperly appealed to the jurors' sympathy

and their civic duty by asking them not to discount the victim's murder because he was a black

man involved in narcotics and to do what justice requires. While the prosecutor's statements

may have evoked sympathy for the victim, the prosecutor did not ask the jury to convict on that

basis. Instead, the prosecutor simply asked the jurors not to minimize the killing of Perry based

upon his race or illegal drug activity. Even assuming that these references were improper, they

did not rise to the level of prosecutorial misconduct. Viewed in its entirety, the prosecutor's

closing argument reviewed the evidence presented at trial and asked the jury to convict on that

basis. The prosecutor's comments regarding the victim of the crime did not deprive Petitioner of

a fundamentally fair trial and, therefore, did not constitute prosecutorial misconduct.

**F. Alleged Ineffective Assistance of Counsel**

Petitioner asserts that he is entitled to habeas relief because he received ineffective assistance of trial counsel. Petitioner alleges trial counsel was ineffective in the following ways: (i) failing to investigate and produce witnesses; (ii) violating Petitioner's right to testify in his own defense; (iii) failing to request instruction on lesser-included offenses; (iv) failing to object to second-degree murder instruction; and (v) failing to object to the prosecutor's closing argument.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Strickland, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. Strickland, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." <u>Id.</u>

### 1. Duty to Investigate and Produce Witnesses

Petitioner first claims that his attorney failed to investigate and produce three witnesses, Maurice Williams, Wilbert Robinson, and Jordan Germany, who, according to Petitioner, would have provided exculpatory testimony.

Under <u>Strickland</u>, trial counsel has a duty to investigate his case. 466 U.S. 690-91. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." <u>Towns v. Smith</u>, 395 F.3d 251, 258 (6th Cir.2005).

Petitioner has not shown that either Maurice Williams or Wilbert Robinson were known witnesses at the time of his trial or could have been uncovered through a reasonable investigation. In the affidavit, executed six years after Petitioner's conviction, Williams stated that he intentionally did not tell anyone what he knew at the time of the murder or trial because he was frightened. Similarly, in his affidavit, executed ten years after the incident, Robinson states that he too did not tell anyone what he knew about the events surrounding the shooting because he was frightened. Thus, Williams and Robinson were not known witnesses at the time of trial, nor is it clear that he could have been discovered. *Compare* <u>Blackburn v. Foltz</u>, 828 F.2d 1177, 1183 (6th Cir.1987) (holding that counsel's failure "to investigate a *known* and potentially important alibi witness" constituted ineffective assistance). Thus, Petitioner has failed to show that his attorney, through a reasonable investigation, could have discovered that either of these witnesses might possess potentially relevant information. Accordingly, he has

failed to show that his attorney was ineffective in failing to present them.

In Jordan Germany's affidavit, he states that he saw Petitioner move a heavy bar out of his home. Petitioner argues this testimony would have corroborated his alibi witnesses' testimony that he was doing home repairs and renovations at the time of the shooting. However, Germany states in his affidavit that he does not recall the date on which this happened. Therefore, his testimony would not have been particularly useful as support for Petitioner's alibi. Moreover, to the extent it would corroborate his other alibi witnesses, the testimony was merely cumulative and Petitioner was not prejudiced by his attorney's failure to call Germany.

## 2. Petitioner's Right to Testify in Own Defense

Petitioner claims that counsel was ineffective for denying petitioner his right to testify. When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. Gonzales v. Elo, 233 F. 3d 348, 357 (6th Cir. 2000). A trial court has no duty to inquire *sua sponte* whether a defendant knowingly, voluntarily, or intelligently waives his right to testify. United States v. Webber, 208 F. 3d 545, 551-52 (6th Cir. 2000). In addition, a state trial judge is not constitutionally required to specifically address a criminal defendant and both explain that he has a right to testify and ask him whether he wishes to waive that right. Siciliano v. Vose, 834 F. 2d 29, 30 (1st Cir. 1987). Waiver of the right to testify may be inferred from a defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. Webber, 208 F. 3d at 551. Here, petitioner did not alert the trial court at the time of trial that he wanted to testify. Thus, his failure to do so constitutes a waiver of this right. Id. Because the record is void of any indication by petitioner that he disagreed with counsel's advice that he should not testify,

petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel.  Gonzales, 233 F. 3d at 357.

### 3.  Jury Instructions

Petitioner argues that counsel was ineffective in failing to request instructions on manslaughter and assault with intent to do great bodily harm.  The Sixth Circuit Court of Appeals has held that, on habeas review, a petitioner  may not establish that his attorney was ineffective for failing to request a lesser-included offense instruction where the evidence was sufficient to support the greater offense.  Fischer v. Morgan, 83 Fed. App'x 64, 66-67 (6th Cir. 2003).  As discussed in detail below, the evidence presented was sufficient to support all of Petitioner's convictions.  Thus, he cannot establish that his attorney was ineffective in failing to request the lesser-included offense instructions.

### 4.  Failure to Object to Second-Degree Murder Instruction

Next, Petitioner argues that his attorney was ineffective in failing to object to the second-degree murder instruction.  As discussed above, any error in the instruction was harmless.  Therefore, Petitioner cannot show that he suffered any prejudice from his attorney's failure to object.

### 5.  Prosecutor's Closing Argument

Finally, Petitioner claims that his attorney was ineffective in failing to object to the prosecutor's closing argument.  Petitioner has failed to show that the prosecutor's argument was improper.  Therefore, counsel was not ineffective in failing to object.

## G. Newly Discovered Evidence

In his fourth claim for habeas corpus relief, Petitioner argues that a new trial should be granted on the basis of newly discovered evidence of three witnesses who were not presented at trial. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. . . . [F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." Herrera v. Collins, 506 U.S. 390, 400, (1993). Therefore, this claim of newly discovered evidence, absent an independent constitutional violation is insufficient to establish a basis for habeas corpus relief. Moreover, Petitioner has not shown "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327.

## H. Petitioner's Right to Testify in His Own Defense

Petitioner argues that he was denied his constitutional right to testify on his own behalf.

"[A] criminal defendant has a fundamental constitutional right to testify on his own behalf." Neuman v. Rivers, 125 F.3d 315, 318 (6th Cir.1997) (citing Rock v. Arkansas, 483 U.S. 44, 51-53 (1987)). In an affidavit executed approximately seven years after his conviction, Petitioner asserts that he twice told his attorney he wanted to testify, but was told he could not. A "'barebones assertion by a defendant, [even one] made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary . . . to give the claim sufficient credibility to warrant a further investment of judicial resources in

determining the truth of the claim.'" McCoy v. Bock, 2003 WL 22994984, *11 (E.D. Mich. Dec.17, 2003), *quoting* Underwood v. Clark, 939 F.2d 473, 476 (7th Cir.1991). Petitioner's conclusory assertion, made only after a lapse of a significant period of time, coupled with Petitioner's silence on the record does not constitute a substantial showing that his defense counsel forbade him to testify. *See* Pagani-Gallego v. U.S., 76 Fed. App'x 20, 23 (6th Cir. 2003); Talley v. U.S., 2006 WL 3422997, *17 (E.D. Tenn. November 27, 2006) (petitioner's statement that attorney "refused" to allow him to testify at trial insufficient to establish violation of constitutional right to testify).

## I. Trial Court's Comments Regarding Presumption of Innocence

Petitioner argues that the trial court grossly mischaracterized the presumption of innocence during jury *voir dire* and that this mischaracterization deprived him of his right to a fair trial. The trial court made the following remarks during *voir dire*:

> It doesn't matter what type of charge there is, or what the circumstances may be, there is the presumption of innocence. I mean if someone were to stand out in the middle of Tiger Stadium, during a game, you know, and shoot someone right there, and everybody is watching, and that person is arrested right there. That person goes to trial, that person still hast he right to have a fair trial, has a right the to the presumption of innocence and so forth. So, it doesn't matter about the nature of the crime or the circumstances. Every case starts off the same way.

Tr., Vol. I, pp. 31-32.

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." Delo v. Lashley, 507 U.S. 272, 278 (1993), (quoting Estelle v. Williams, 425 U.S. 501, 503 (1976)). Even if this isolated statement could be construed as improper, the trial court subsequently correctly instructed the jury as to the presumption of innocence. First, the trial court judge advised the jury that the

defendant is presumed innocent at the beginning of trial, during trial, and into the jury room, until evidence is presented that establishes the defendant's guilt. He further stated, "unless and until that time the presumption of innocence maintains." Tr., Vol. I, p. 32. At the close of trial, the trial court again correctly instructed the jury regarding the presumption of innocence. Because jurors are presumed to follow the trial court's instructions, an incorrect remark regarding the presumption of innocence during *voir dire* may be alleviated by the subsequent giving of correct instructions regarding the presumption of innocence. U.S. v. Hynes, 467 F.3d 951, 956 (6th Cir. 2006).

The Court concludes that Petitioner has failed to show that the trial court's statement jury *voir dire* deprived him of his right to a fair trial or due process.

### J. Sentencing Claim

Petitioner argues that his right to due process was violated because the trial Court sentenced him as if he had been convicted of first rather than second-degree murder. Petitioner's argument is based upon the following statement made at sentencing by the trial judge in response to Petitioner's statement that he was innocent:

> In spite of what you way, Mr. Little and you can maintain those beliefs as long as you want to. I assume that's very convenient to do so. But, there's no doubt in my mind, based on the evidence in this particular case, specifically the lady who put you there with a motive, and comments that were made, although she wasn't actually on the scene. And, then the person who identified your – the car that was very much yours. And, the other persons who were on the scene there who were assaulted, who came in here and made the identification. All of that lends itself to me to a solid case. And, a very good reason and basic reason for the jury to find as they did. In fact, I'm surprised that they didn't find murder in the second – in the first degrees in this particular case. Because, to me, it was planned, it was calculated. There was intent to do it.

Sentencing Tr., 7/10/92, pp. 12-13.

A sentence violates due process when "it was carelessly or deliberately pronounced on an extensive and materially false foundation which the prisoner had no opportunity to correct." Draughn v. Jabe, 803 F. Supp. 70, 80 (E.D. Mich.1992), aff'd, 989 F.2d 499, 1993 WL 76226 (6th Cir.1993), citing Townsend v. Burke, 334 U.S. 736, 741 (1948). The guidelines range for the second-degree murder conviction was 40 years to life. The sentencing judge sentenced Petitioner to 30 to 60 years imprisonment. Under Michigan law, the maximum sentence for second-degree murder and assault with intent to murder is life imprisonment. Mich. Comp. Laws § § 750.317, 750.83. The record does not show that Petitioner's sentence was based on the misinformation that he should have been charged with first degree murder. Rather, the facts upon which the trial court based Petitioner's sentence for the second-degree murder conviction are clearly evident in the record. In addition, Petitioner was actually sentenced below the guidelines range. Thus, Petitioner has failed to show that he was sentenced based upon a charge of which he was acquitted.

### K. Sufficiency of the Evidence

Petitioner argues that insufficient evidence was presented at trial to sustain his convictions.

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilty beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979).

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at trial established guilty beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

23

Id. at 318-19 (internal citation and footnote omitted). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16.

Under Michigan law, to support a conviction of second-degree murder, the prosecution must prove that "defendant caused the death of the victim and that the killing was done with malice and without justification or excuse." People v. Harris, 190 Mich. App. 652, 659; 476 N.W.2d 767 (1991). "Malice" is defined as the intent to kill, the intent to do great bodily harm, or the wanton or willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm. Id. "[T]he facts and circumstances of the killing may give rise to an inference of malice." People v. Carines, 460 Mich. 750, 759; 597 N.W.2d 130 (1999). "Malice may also be inferred from the use of a deadly weapon." Id. at 759.

To prove the crime of assault with intent to commit murder under Michigan law, the prosecution must establish: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. People v. Hoffman, 225 Mich. App. 103, 111; 570 N.W.2d 146 (1997). The intent to kill may be proven by inference from any facts in evidence. Id.

Petitioner provides no specific argument in support of his claim of insufficient evidence other than a conclusory statement that: "Given the requirements of Michigan law for the crime of first degree murder [sic], when examining the sufficiency of the evidence, the evidence does not support Petitioner's conviction and a grave miscarriage of justice has occurred." Petitioner's brief at p. 56. Two witnesses testified at trial that Petitioner burst into Perry's basement apartment, shot into a room of three people, and then fled. Further, Renarda Curry testified that,

on the day of the shooting, she advised Petitioner of an altercation she had with Perry and his friends and that, in response, Petitioner stated that "[Perry] and his boys were itching for a fight, so they were going to get a fight." Tr., 5/11/92, p. 236. Given this testimony, the Court finds that sufficient evidence was presented to sustain Petitioner's convictions.

## L. Admission of Photograph of Victim

Petitioner claims that the trial court improperly admitted a photograph of the deceased victim. He argues that the photograph was irrelevant and its admission was so prejudicial as to deprive Petitioner of a fair trial.

The Sixth Circuit has held that "[h]abeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994), citing Fuson v. Jago, 773 F.2d 55, 59 (6th Cir. 1985), cert. denied 478 U.S. 1020 (1986). It is well-established that "[e]rrors of application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus actions. . . . Yet, when the error rises to the level of depriving the defendant of fundamental fairness, the claim is remediable on a petition for habeas corpus relief." Matlock v. Rose, 731 F.2d 1236, 1242 (6th Cir. 1984) (internal citations omitted). See also Estelle, 502 U.S. at 72 (holding that a federal court may not grant habeas corpus relief simply on the basis that a trial court incorrectly interpreted state evidence rules to allow admission of prior bad acts evidence).

The trial court allowed the admission of a single photograph, concluding that it illustrated the coroner's testimony regarding the entry point of the bullet. The Court holds that the decision to admit the victim's photograph did not render Petitioner's trial fundamentally unfair.

Accordingly, Petitioner is not entitled to habeas corpus relief with respect to this claim.

## M. Exclusion of Allegedly Exculpatory Evidence

Petitioner argues that the trial court deprived him of his right to present a defense when it excluded testimony from Cornel Gentry which would have exculpated him, by inculpating Thaddeus Bickman in the crime.

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law." Washington v. State, 388 U.S. 14, 19 (1967). It is one of the "minimum essentials of a fair trial." Chambers v. Mississippi, 410 U.S. 284, 294 (1973). The Supreme Court has described the "most basic ingredients of due process of law" as follows:

> "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense -- a right to his day in court -- are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel."

Washington v. Texas, 388 U.S. 14, 18 (1967) (emphasis supplied), *quoting* In re Oliver, 333 U.S. 257 (1948).

Further, the Supreme Court described the right to present a defense as follows:

> The right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

Id.

This Court recognizes that, while the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." United States v. Scheffer, 118 S. Ct. 1261, 1264 (1998). Indeed, "[a]

26

defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." Id. (internal quotations omitted).  However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." Id., *citing* Rock v. Arkansas, 483 U.S. 44, 58 (1987); *see also Chambers v. Mississippi*, 410 U.S. 283, 302 (1973); Washington v. Texas, 388 U.S. 14, 22-23 (1967).

In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the court's role is not to determine whether the excluded evidence would have caused the jury to reach a different result.  Davis v. Alaska, 415 U.S. 300, 317 (1973).  Instead, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'"  Crane v. Kentucky, 476 U.S. 683, 690 (1986), *quoting* California v. Trombetta, 467 U.S. 479, 485 (1984).  The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'" Id. at 690-691 (1984), *quoting* United States v. Cronic, 466 U.S. 648, 656 (1984).

Having reviewed the transcript, the Court finds that Petitioner had other opportunities to present evidence regarding his belief that Thaddeus Bickman was the gunman.  The Court finds that the trial court placed reasonable restrictions on the admission of testimony regarding Bickman.  Petitioner was not denied his right to present a meaningful defense by the court's imposition of these reasonable restrictions.  Therefore, the Court denies relief on this claim.

### N.  Cumulative Effect of Alleged Errors

In his final claim, Petitioner alleges that he was deprived of a fair trial because of cumulative error.  The Sixth Circuit has expressed doubt that about the validity of the argument that cumulative errors may warrant habeas relief in the post-AEDPA era.  *See* Lorraine v. Coyle,

291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"); Moore v. Parker, 425 F.3d 250 (6th Cir. 2005) (same). Moreover, even if such a claim could merit habeas relief, the Court does not find that errors were committed when considered separately or together that abridged Petitioner's constitutional rights. Petitioner is not entitled to habeas relief on his cumulative errors claim.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.


s/Nancy G. Edmunds                              
Nancy G. Edmunds
United States District Judge

Dated: February 20, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 20, 2008, by electronic and/or ordinary mail.

s/Carol A. Hemeyer                              
Case Manager